UNITED STATES DISTRICT COURT
DISTRICT OF NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

JAMES STUART,

              Plaintiff,

                                  Civil Action No.:

v.

ANTHEM BLUE CROSS BLUE
SHIELD OF GEORGIA, and
QUANTUM HEALTH, INC.,

              Defendants.

_____
_____

## COMPLAINT

Plaintiff, JAMES STUART ("Plaintiff" "Mr. Stuart"), by and through his counsel, Pamela I. Atkins, Atkins & Associates, Attorneys-At-Law, LLC and Schwartz, Conroy & Hack, P.C., set forth the following as his Complaint against Anthem Blue Cross Blue Shield of Georgia and Quantum Health, Inc. ("collectively Defendants"), alleging as follows:

## PARTIES

1. At all times relevant to the subject matter of this Complaint, Plaintiff James Stuart was insured and a plan participant under policy issued by Anthem

Blue Cross Blue Shield of Georgia (hereinafter "BCBS") to Mr. Stuart's employer at the time, HD Supply, Inc. (hereinafter "Health Plan").

2. Mr. Stuart is a resident of city of Greer, County of Greenville, State of South Carolina.

3. Defendant BCBS provides health benefit plans and policies of health insurance nation-wide, including individual health benefit plans, employer-sponsored group health plans, and government-sponsored health benefit plans, and provide benefits administration and third-party claims processing services to numerous employee benefit plans, such as Mr. Stuart's employee health benefit plan.

4. Defendant BCBS was incorporated in the State of Georgia with its primary headquarters and center of operations located at 740 W. Peachtree Street NW, Atlanta, Georgia.

5. Defendant Quantum Health Inc. is a healthcare coordination company that works with various health insurance carriers, including BCBS, to perform various functions including the evaluation of administrative appeals of denied health care benefits, such as Mr. Stuart's administrative appeals.

6. Defendant Quantum Health, Inc, was incorporated in the State of Ohio with its primary headquarters and center of operations located at 5240 Blazer Pkwy, Dublin, Ohio.

## JURISDICTION AND VENUE

7. The Court has federal subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §1331 and ERISA §502(e)(1), 29 U.S.C. §1132(e)(1). Moreover, ERISA §502(e)(2), 29 U.S.C. §1132 (e)(2) provides for nationwide service of process. All Defendants are residents of the United States, and subject to service in the United States, and this Court, therefore, has personal jurisdiction over them.

8. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. §1132(e)(2) and 28 U.S.C. § 1391(b), because Defendants reside or may be found in this District.

## FACTS

9. Mr. Stuart became mortally ill while in Italy on November 2, 2023.

10. Mr. Stuart's health was rapidly declining under the care of Italian doctors.

11. Due to the rapidly declining state of Mr. Stuart's health, it became necessary to evacuate him due to his substandard care in Italy.

12. At the time of his illness in Italy, Mr. Stuart was insured, a plan participant and beneficiary under the Health Plan.

13. Despite requests for a complete copy of the Health Plan through ERISA's administrative process, Defendants declined to provide same although Defendants were required to provide same pursuant to 29 C.F.R. 29560.503-1.

14. Based on on-line resources, the Health Plan contemplated and provided for emergency air ambulance services in medically necessary circumstances.

15. The Health Plan provides that Air Ambulance services are covered in medically necessary circumstances.

16. The Health Plan provides that that use of air ambulance services are considered to be medically necessary when all of the following criteria are met:

    A.    The ambulance must have the necessary equipment and supplies to address the needs of the individual; **and**

    B.    The individual's condition must be such that any form of transportation other than by ambulance would be medically contraindicated; **and**

    C.    The individual's condition is such that the time needed to transport by land poses a threat to the individual's survival or seriously endangers the individual's health; or the individual's location is such that accessibility is only feasible by air or water transportation; **and**

    D.    There is a medical condition that is life threatening or first responders deem to be life threatening, including, but not limited to the following:

        1.    Intercranial bleeding; **or**

        2.    Cardiogenic shock; **or**

        3.    Major burns requiring immediate treatment in a Burn Center; **or**

    4.    Conditions requiring immediate treatment in a Hyperbaric Oxygen Unit; **or**

    5.    Multiple severe injuries; **or**

    6.    Transplants; **or**

    7.    Limb-threatening trauma; **or**

    8.    High risk pregnancy; **or**

    9.    Acute myocardial infarction.

17. The Health Plan provides that the use of air ambulance services is considered medically necessary up to the distance required for transport to the nearest appropriate facility.

18. The Health Plan provides that the use of air ambulance services to transport and individual from one hospital to another requires that: 1) The criteria outlined in "A"-"D," above must be met; and that 2) the first hospital does not have the required services and facilities to treat the individual.

19. The Health Plan provides that Air Ambulance services are covered and there is not a need for precertification.

20. The Health Plan provides that the Air Ambulance provider can be in or out of network.

21. The Health Plan defines Emergency Medical Condition as: a medical condition of recent onset and severity, including severe pain, such that the absence

of immediate medical attention could reasonably be expected to result in serious impairment to bodily function, serious dysfunction, of any bodily organ or part, or would place the person's health . . . in serious jeopardy.

22.     Mr. Stuart's condition deteriorated in Italy. Due to substandard care, he was intubated and received multiple intravenous medications.

23.     Mr. Stuart's condition satisfied all of the criteria necessary for emergency air transport: The air ambulance had all of the necessary medical equipment, transportation from Italy to South Carolina by anything other than air transport was contraindicated, transportation by land was not feasible; and he suffered from a life-threatening condition.

24.     VitalOne performed emergency air transport services from Italy to South Carolina.

25.     VitalOne issued a CMA 1500 Health Insurance Claim Form for air ambulance services rendered in the amount of $1,664,650, which is the usual and customary charge for a flight of this type-5,370 miles requiring fuel stops and life support for a critically ill patient.

26.     Defendants received medical records clearly identifying the emergent nature of Mr. Stuart's condition upon his arrival in the United States.

27. Mr. Stuart was an elderly patient suffering from respiratory failure, bilateral pneumonia with additional respiratory illnesses, requiring mechanical ventilation, IVs and required 24-hour critical care.

28. Upon his arrival in South Carolina, Mr. Stuart's critical care physician stated:

> [u]pon my evaluation, this patient is critically ill with a high probability of imminent and/or life-threatening deterioration due to the medical conditions [listed above] which required my direct attention, intervention and personal management. The patient has multiple medical problems with complex decision making.

29. Defendants denied Plaintiff's claim for air ambulance transport services on the basis that it was not "medically necessary."

30. Plaintiff administratively appealed that decision on May 8, 2024.

31. That May 8, 2024 appeal specifically requested information required to be provided under Department of Labor Regulation 29 C.F.R. 2560.503-1 for a full and fair review of Plaintiff's claim. Specifically, that appeal requested that Defendants' claim file, correspondence, plan documents and other information be provided.

32. That appeal was denied by Defendants on July 29, 2024.

33. Defendants did not provide Plaintiff with the information requested pursuant to the aforementioned Department of Labor regulation.

34. Plaintiff submitted a second administrative appeal in the absence of the requested claim information.

35. That second appeal was denied on October 25, 2024.

36. Plaintiff cooperated with Defendants.

37. Plaintiff provided proper proof of loss and complied with all Health Plan requirements for the processing of the claim.

38. Plaintiff was a beneficiary and plan participant at the time the claim was made.

## COUNT I

### CLAIM AGAINST DEFENDANTS FOR UNPAID BEENFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

39. Plaintiff repeats and realleges all of the foregoing allegations as though set forth, fully below.

40. Plaintiff filed timely notice of claim.

41. Defendants denied those benefits.

42. Plaintiff exhausted all of his administrative remedies.

43. Defendants have refused to pay anything towards the covered air ambulance services.

44. As a result of the foregoing, Plaintiff suffered damages.

45. Defendants violated their legal obligations under this ERISA-governed Insurance Policy when they denied payment to Plaintiff for the emergency air ambulance services provided to Mr. Stuart, in violation of the terms of the Health Plan and in violation of ERISA section 502(a)(1)B), 29 U.S.C. section 1132(a)(1)(B).

46. As a result of the Defendants' wrongful conduct, Plaintiff was forced to retain an attorney and a billing advocate and have incurred costs and attorneys' fees and expenses in an effort to obtain benefits to which Mr. Stuart is entitled under the Health Plan. Plaintiff has also been forced to incur unnecessary time and expense in appealing Defendants' improper denial of benefits owed under the Insurance Policy.

47. Defendants' position is not substantially justified, and Plaintiff is entitled to an award of costs and attorneys' fees and expenses under 28 U.S.C. §2412.

48. Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claim was originally submitted to Defendants. He also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendants.

**WHEREFORE**, Plaintiff demands judgment in their favor and against Defendants as follows:

(a) Ordering Defendants to pay Mr. Stuart's claim in full, including benefits for Mr. Stuart's emergency air ambulance transport services to South Carolina in the amount of $1,664,650;

(b) Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

(c) Awarding Plaintiff pre-judgment interest; and

(d) Granting Plaintiff such other and further legal and equitable relief as is just and proper.

Respectfully submitted this 25th day of July, 2025

        **ATTORNEYS FOR PLAINTIFF**

        **ATKINS AND ASSOCIATES,**
        **ATTORNEYS AT LAW, LLC**
        */s/Pamela I. Atkins*
        PAMELA I. ATKINS
        Georgia Bar No. 026302

6075 Barfield Rd.,
Atlanta, Georgia 30328
Phone: (770) 399-9999; Fax: (770) 399-9939
patkins@adisability.com www.adisability.com

        **SCHWARTZ, CONROY & HACK, PC**
        Michail Z. Hack, Esq.
        *(Pro Hac Vice Pending)*

666 Old Country Road, 9th Fl.
Garden City, NY 11530
Phone: (516) 745-1122
mzh@schlawp.com